# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2025-0079
_____

NANCY ESTES,

    Appellant,

    v.

PALM BEACH COUNTY SCHOOL
DISTRICT, and DAVIES CLAIMS
NORTH AMERICA, INC.,

    Appellees.

_____

On appeal from the Office of the Judges of Compensation Claims.
Gregory J. Johnsen, Judge of Compensation Claims.

Date of Accident: September 30, 2021.

March 23, 2026

EN BANC

OSTERHAUS, C.J.

In 1994, a comprehensive revision of the Workers' Compensation Law became effective in Florida. As part of that overhaul, the Legislature replaced a statute of limitations regime in § 440.19(1), Florida Statutes, that had allowed claimants to obtain successive two-year extensions to seek benefits. The revised law took a stricter tolling approach under which a claimant's receipt of injury-related treatment or benefits would "*toll* the [original two-year] limitations period set forth above . . . for 1 year

from the date" that the benefits were provided or paid. § 440.19(2), Fla. Stat. (emphasis added). Nancy Estes's case turns on the meaning of this tolling provision. Because the term "toll" here means to suspend, stop temporarily, or abate the "limitations period set forth above," rather than extending a discrete one-year period to file additional claims, we set aside the final order which dismissed Estes's petition for benefits on timeliness grounds.[1]

## I.

Nancy Estes was a teacher employed by the Palm Beach County School District. On September 30, 2021, she tripped and fell on the job sustaining an accidental injury that was accepted as compensable by Appellees, the employer/carrier (E/C). The E/C paid workers' compensation medical and indemnity benefits to Estes for about sixteen months, from October 2021 to January 2023. According to the parties' hearing stipulation, the last date the E/C furnished any benefit was January 26, 2023. After that, the E/C filed a Notice of Denial on February 8, 2023, signaling its intention to deny any additional future medical treatments or benefits based on allegations that the accident was not the major contributing cause of her need for such treatments or benefits. In June 2024, about seventeen months after receiving her last benefits, Estes filed a petition for benefits (PFB). She sought a one-time change in orthopedists and other benefits. The E/C denied her claims contending that the statute of limitations barred them all.

---

[1] This appeal has been decided en banc because, as discussed below, it corrects our interpretation of § 440.19(2) in a way that directly conflicts with how several previous panels of this court applied the tolling provision in cases such as: *Orange Cnty. Sch. Bd. v. Best*, 728 So. 2d 1186, 1188 (Fla. 1st DCA 1999); *Claims Mgmt., Inc. v. Philip*, 746 So. 2d 1180, 1181 (Fla. 1st DCA 1999); *Medpartners/Diagnostic Clinic Med. Grp. v. Zenith Ins. Co.*, 23 So. 3d 202, 204, 206 (Fla. 1st DCA 2009); *Varitimidis v. Walgreen Co./Sedgwick Claims Mgmt. Services, Inc.*, 58 So. 3d 406, 407–08 (Fla. 1st DCA 2011); *Sanchez v. Am. Airlines*, 169 So. 3d 1197, 1198 (Fla. 1st DCA 2015). *See* Fla. R. App. P. 9.331(a) (allowing for en banc hearings if "necessary to maintain uniformity in the court's decisions").

The Office of the Judges of Compensation Claims took up the matter and, by agreement of the parties, held a first-step final hearing, focusing upon the timeliness of Estes's petition and the proper application of the limitations and tolling provisions in § 440.19. The PFB had been filed more than two years after the accident and more than a year after the furnishment of the last compensation benefit. And so, the Judge of Compensation Claims (JCC) followed the statute-of-limitations approach from *Best*, *Philip*, and similar precedents and concluded that § 440.19(1)'s two-year statute of limitations had lapsed after having never been suspended or abated by operation of § 440.19(2). Instead, the final order concluded that § 440.19(2) had gained Estes a discrete extension to file her claim calculated one year from the date on which she last received treatment or benefits from the E/C. The JCC's Final Order thus dismissed with prejudice Estes's entire PFB on statute of limitations grounds. The Final Order alternatively considered Estes to have raised compensability issues, to which the tolling provision in § 440.19(2) doesn't apply.

Estes subsequently appealed and argued that the tolling provision had been incorrectly interpreted and applied. In Estes's view, § 440.19(2) suspended the original two-year statute of limitations clock for a substantial period, such that her PFB was filed well within the applicable statutory deadline and shouldn't have been dismissed as untimely. More specifically, because the E/C had furnished Estes care and benefits for sixteen months, starting almost immediately after her injury until January 2023, those benefits tolled—meaning suspended or abated—the running of § 440.19(1)'s two-year limitations clock until one year after the E/C furnished her last treatment and benefits. And so, the two-year limitations clock didn't even begin running again until the expiration of the separate one-year tolling clock established by § 440.19(2), which was January 2024 at the soonest. Consequently, due to the tolling, Estes claimed to have most of the original two-year limitations period still intact when she filed her PFB in June 2024.

3

II.

A.

This case requires us to decide whether the E/C's provision of workers' compensation treatment or benefits suspends the running of the two-year statute of limitations in § 440.19. Estes argues that her June 2024 petition for benefits was timely filed because her receipt of injury-related benefits through January 2023, suspended § 440.19(1)'s two-year limitations clock until one year after she received the last benefits and then resumed running in January 2024 (which gave her until January 2026 to file her PFB). Whereas the E/C views the two-year statutory limitations period to have never been stopped after the date of the accident, except that claimant got the benefit of a separately running one-year extension, which ran past the end of the limitations period, ending one year after receiving her last treatment or benefits in January 2023 (which gave her only until January 2024 to file a PFB).[2]

The history of legislative revisions to § 440.19 is relevant to analyzing the parties' competing statute-of-limitations arguments. Starting in 1994, the Legislature changed the text of the operative statute of limitations provision in § 440.19 from an extension-based regime to a tolling-based one. Before 1994, the pertinent text stated as follows:

(a) The right to compensation for disability, rehabilitation, impairment, or wage loss under this chapter shall be barred unless a claim therefor which meets the requirements of paragraph (e) is filed within 2 years after the time of injury, *except that, if payment of compensation has been made or remedial treatment or rehabilitative services have been furnished by the*

---

[2] Estes also argued on rehearing before the JCC that her limitations period extended even further because payments for her benefits were made by the E/C on a later date. We see, however, no error in the JCC's rejection of that argument on preservation grounds.

*employer on account of such injury, a claim may be filed within 2 years after the date of the last payment of compensation or after the date of the last remedial treatment or rehabilitative services furnished by the employer.* This limitations period *shall not be tolled or extended* by the failure of the employer or carrier to file a notice of injury. . .

(b) All right for remedial attention under this section shall be barred unless a claim therefor which meets the requirements of paragraph (e) is filed with the division within 2 years after the time of injury, *except that, if payment of compensation has been made or remedial attention or rehabilitative services have been furnished by the employer without an award on account of such injury, a claim may be filed within 2 years after the date of the last payment of compensation or within 2 years after the date of the last remedial attention or rehabilitative services furnished by the employer*; and all rights for remedial attention or rehabilitative services under this section pursuant to the terms of an award shall be barred unless a further claim therefor is filed with the division within 2 years after the entry of such award, except that, if payment of compensation has been made or remedial attention or rehabilitative services have been furnished by the employer under the terms of the award, a further claim may be filed within 2 years after the date of the last payment of compensation or within 2 years after the date of the last remedial attention or rehabilitative services furnished by the employer. However, no statute of limitations shall apply to the right for remedial attention relating to the insertion or attachment of a prosthetic device to any part of the body. . .

§ 440.19(1)(a)−(b), Fla. Stat. (1993) (emphases added).

Under this pre-1994 regime, the Florida Supreme Court consistently treated the highlighted language as an *extension* of the statute of limitations as opposed to a suspension of it. *See Sargent v. Evening Indep., Inc.*, 62 So. 2d 58, 60 (Fla. 1952); *Watson v. Delta Airlines, Inc.*, 288 So. 2d 193, 196 (Fla. 1973)

5

("Thus, on the dual basis of 1) 'remedial' attention having been voluntarily furnished within the two years required by the same exceptions within the two statutes, and 2) compensation voluntarily paid 'without an award' also within such two years, the claimant falls within the statutory exceptions in s 440.13(3)(b) and s 440.19(1)(a) and is within such '*extended*' two year statute of limitations as a basis for recovery." (emphasis added)); *cf. Daniel v. Holmes Lumber Co.*, 490 So. 2d 1252, 1256 (Fla. 1986) ("Yet in the case of sections 440.13(3)(b) and 440.19(1)(a) no ambiguities exist. These statutes unequivocally state that so long as an employee files a claim within two years of the last voluntary compensation payment or dispensation of remedial treatment made without an award the claim is timely. Neither statute contains any reference whatsoever to the relevance of a two-year gap in time.") (citations omitted); *Holder v. Keller Kitchen Cabinets*, 610 So. 2d 1264, 1267 (Fla. 1992) ("This provision has since been redesignated section 440.19(1)(a). This amendment removed the limitation restricting the exception to the two-year limitation period for filing a claim for compensation to situations where payment of compensation or remedial treatment was voluntarily provided. Thus, under the plain language of the amendment, the *extension* of the limitations period applies where payment of compensation or remedial treatment has been provided either voluntarily or pursuant to an order. Amendments, such as this, that lengthen the limitation period for filing a claim apply to claims that are viable at the time of the amendment." (emphasis added) (citations omitted)). And so, with each new payment or treatment came a fresh two-year extension of the limitations period, leaving the original two-year period completely in its wake.

This court also treated the prior language as either an extension of the limitations period or, similarly, a revival of the limitations period. *See Iuen v. Live Wire Elec. Co.*, 538 So. 2d 1312, 1313 (Fla. 1st DCA 1989) ("Voluntary payment for remedial attention revives the two year limitation period, even if a two year period without compensation payments or remedial attention has already passed."); *Roe v. City Inv./Gen. Dev. Corp.*, 587 So. 2d 1323, 1324, 1325 (Fla. 1991) ("Hence the statute in its present form unambiguously states that a claimant is entitled to disability if a claim is filed within two years of the last remedial treatment. We therefore hold that a claim for disability is not time-barred, despite

6

a two-year gap between the injury and the claim, so long as the claim is filed within two years after the last remedial treatment."); *Bell v. Com. Carriers*, 603 So. 2d 683, 685 (Fla. 1st DCA 1992) ("Under the clear language of the statute, the fact that the employer may not have intended to voluntarily provide remedial treatment and thus revive the statute of limitations for the 1981 injury is not controlling. Remedial treatment need not be voluntary in order to *revive* the statute. The critical question is whether the claimant has filed a claim within two years of the last compensation payment or remedial treatment causally related to a compensable injury." (emphasis added) (citations omitted)).

But in 1994 the Legislature tightened the statute of limitations provision in § 440.19, by pivoting to a tolling regime that fixed the two-year period in subsection (1) altogether as the ultimate basis for calculating the limitations period when benefits are provided. It stated:

(1) Except to the extent provided elsewhere in this section, all employee petitions for benefits under this chapter shall be barred unless the employee, or the employee's estate if the employee is deceased, has advised the employer of the injury or death pursuant to s. 440.185(1) and the petition is filed within 2 years after the date on which the employee knew or should have known that the injury or death arose out of work performed in the course and scope of employment.

(2) Payment of any indemnity benefit or the furnishing of remedial treatment, care, or attendance pursuant to either a notice of injury or a petition for benefits *shall toll the limitations period set forth above for 1 year from the date of such payment.* This *tolling period* does not apply to the issues of compensability, date of maximum medical improvement, or permanent impairment.

(3) The filing of a petition for benefits *does not toll* the limitations period set forth in this section unless the petition meets the specificity requirements set forth in s. 440.192.

7

§ 440.19(1)−(3), Fla. Stat. (1994) (emphases added).

Using the word "toll" to establish a "tolling period" departed from the previous statute's "except[ion]" and extension of the limitations period. The revision reined in a previously more claimant-friendly regime that gave claimants rolling two-year extensions of the limitations period. Under the revised statute, the original term would remain the base two-year limitations period for seeking benefits but would allow for qualifying events to "toll" the two-year period for a year.

The Legislature did not define "toll" in the revised statute. We must do so here because our past cases have not given it proper effect. "Toll" is a legal term with an established, ordinary meaning. *See Debaun v. State*, 213 So. 3d 747, 751 (Fla. 2017) (quoting *Sch. Bd. of Palm Beach Cnty. v. Survivors Charter Sch., Inc.*, 3 So. 3d 1220, 1233 (Fla. 2009) ("Where, as here, the [L]egislature has not defined the words used in a [statute], the language should be given its plain and ordinary meaning." (alterations in original)). Dictionaries can supply the "best evidence" of ordinary meaning. *Conage v. United States*, 346 So. 3d 594, 599 (Fla. 2022). Where "toll" is used in the context of a statutory limitations period, dictionaries define it as meaning "to suspend or stop temporarily as the statute of limitations is tolled during the defendant's absence from the jurisdiction and during the plaintiff's minority." Black's Law Dictionary 1488 (6th ed. 1990); *see also* Black's Law Dictionary 1495 (7th ed. 1999) (defining "toll, vb. . . . 2. (Of a time period, esp. a statutory one) to stop the running of; to abate <toll the limitations period>"); *Hankey v. Yarian*, 755 So. 2d 93, 95 n.3 (Fla. 2000) (citing the Black's Law Dictionary definition of "toll" in a statute of limitations case); *Sheffield v. Davis*, 562 So. 2d 384, 386 (Fla. 2d DCA 1990) (describing the "plain and obvious" meaning of "toll" in accordance with various contemporaneous dictionary definitions and cases); *cf. Artis v. D.C.*, 583 U.S. 71, 80–81 (2018) (defining "tolling" to effect a suspension of the limitation period's running, a suspension that can be lifted, prompting the period to "start[] running again when the tolling period ends, picking up where it left off").

That "toll" means "suspend," "stop temporarily," or "abate" in subsection (2) can also be deduced from §440.19's description of tolling under subsection (5). There, if a person is

> a minor, the limitations period is *tolled* while that person has no guardian or other authorized representative, but the period *shall begin to run* . . . in the case of a minor, if no guardian is appointed before the minor becomes of age, from the date the minor becomes of age.

§440.19(5), Fla. Stat. (2021) (emphases added). This subsection works by having the tolling "suspend" the two-year limitations period from subsection (1) and remain stopped (for years potentially) before it "begin[s] to run" again after the stated condition occurs—the minor becomes of age. Conversely, subsection (5) does not toll by adding time as the E/C argues. For example, the limitations period in subsection (5) wouldn't be calculated in the case of a guardian-less, fifteen-year-old claimant by simply granting a three-year extension until the coming-of-age date and then ending the limitations clock on the eighteenth birthday. *See* § 743.07, Fla. Stat. (removing the disability of nonage at age eighteen). Rather, subsection (1)'s two-year-limitations-period clock is "tolled," or suspended, by subsection (5) until the guardian-less minor comes of age, at which time the claimant gets two years to file a claim (until age 20). *See Benton v. ICR Electric*, 852 So. 2d 295, 296 (Fla. 1st DCA 2003) (holding that "[e]ven if the petition for benefits was filed more than two years after the death of the claimant, a minor's claim would not be barred by the statute of limitations . . . [because] the limitations period . . . will not begin to run until a guardian or representative is appointed or until they reach the age of majority"). In view of how tolling works in subsection (5), we cannot interpret it to mean something different in subsection (2).

Use of the dictionary definition of "toll" finds additional support in contemporaneous, 1990's-era Florida Supreme Court interpretations of other statutes of limitations provisions. Just one year before the revision to §440.19(2) took effect, the Florida Supreme Court discussed how "extension" and "tolling" create different effects on the running of limitations periods. In *Tanner v. Hartog*, 618 So. 2d 177 (Fla. 1993), for example, the court

explained, albeit in dicta, that section 766.106(4), Florida Statutes, which deals with medical malpractice actions, tolls the statute of limitations for at least 90 days when a prospective claimant notifies each prospective defendant of an intent to initiate litigation. *Id.* at 182-83. Following the 90-day period, the new statute of limitations deadline would be calculated based on "the time that was remaining in the limitations period" when the 90-day period began (unless less than 60 days remained, in which case the deadline would be in 60 days). *Id.* at 183-84. The court's recognition of "the time that was remaining" shows that "toll" in 1994 meant to "suspend" the running of the limitations clock until the tolling period ends.

Six years after the 1994 revisions to §440.19, the Florida Supreme Court reiterated that the "PLAIN MEANING" of the word "toll" in a statute-of-limitations context was "routinely and consistently interpreted as suspending the running of the statute of limitations time clock until the identified condition is settled." *Hankey*, 755 So. 2d at 96–97 (citing district court cases from 1991 and 1995). The Court then applied this plain meaning of "toll" to the same medical malpractice statute discussed in *Tanner*: "Because the word 'toll' has been consistently used by the Legislature and interpreted by the courts to mean 'suspend' when used in a statutory limitations context, we conclude that it was intended to have the same meaning in section 766.106(4)." *Id.* at 97. The discussion in *Hankey* also makes clear that, in Florida, an "extension" of a limitations period and a "tolling" of a limitation period are different concepts, such that there is significance to the Legislature's choice between these terms in the limitations context. The Court explained as follows:

> Section 766.106(4) of the statutory scheme also provides that if there are less than sixty days remaining to file suit before the end date of the original two-year limitations period at the time the claimant filed the notice of intent to initiate litigation, then the claimant shall have sixty days from the time when the notice of termination of negotiations is received by him to file suit. If, however, there were more than sixty days remaining to file suit before the end date of the original two-year limitations period when the claimant filed the notice, then the

10

claimant only has the time remaining in the original two-year period to file suit. *This provision provides additional time to the limitations period separate and apart from the ninety days of tolling, but only in the limited circumstances set out in the statute where less than sixty days remain to file suit at the time the claimant files the notice of intent.*

*Id.* (emphasis added); *see also id.* at 98 (agreeing that "the '*extension'* provided for under section 766.104(2) is a genuine *extension of time to be added to the limitations period, rather than a tolling (suspension) as provided for under section 766.106(4). . . .* Hence, this time period is to be *tacked on to the end of the limitations period* and does not run simultaneously with the separate ninety-day tolling period provided in section 766.106(4).") (emphases added).

We likewise conclude here that the same term "toll," added to § 440.19(2) in 1994, carries the exact meaning discussed in *Tanner* and *Hankey*. In other words, tolling operates by "interrupt[ing] the running of the statutory limitations period, the statutory time is not counted against the claimant during that . . . period. In essence, the clock stops until the tolling period expires and then begins to run again." *Hankey*, 755 So. 2d at 97. The continuing interaction of the two time-periods set forth in § 440.19(2)— "shall toll the limitations period set forth above for 1 year"—reveals the Legislature's intention to fix the limitations period set forth in subsection (1) as the base period with suspensions of its clock triggered by qualifying tolling events.

This court's previous decisions, on the other hand, erred by not interpreting and applying the tolling provision in §440.19(2) according to this plain meaning. In *Orange County School Board v. Best*, 728 So. 2d 1186, 1188 (Fla. 1st DCA 1999), for instance, we faced the issue of whether the one-year tolling period superseded the two-year limitation period. We proceeded to conflate the definitions of "toll" and "extend" in pronouncing that the two-year, original statute of limitations period could not be stopped. We decided that the limitations period could only be extended under subsection (2) for a discrete one-year period running from the date that benefits were provided: "A petition is timely if filed within two

years of the date of accident *or*, even thereafter, if filed within one year of the last date the petitioner received medical treatment or indemnity benefits." *Id.* (emphasis added); *see also id.* at 1187 ("We read section 440.19(1), Florida Statutes (1995), as the statute of limitations generally applicable in workers' compensation cases, subject to the exceptions—which *extend* the limitations period in certain circumstances—set out in the other subsections of section 440.19. . . . Subsections that follow subsection (2) can have no effect other than to *extend* the two-year statute of limitations set out in section 440.19(1), Florida Statutes (1995)." (emphasis added)). By conflating the concepts of tolling and extending time, we concluded that "Section 440.19(2) has no practical effect *until after* the two-year period provided for in section 440.19(1) *expires*. As long as the petition is timely under either section 440.19(1) or section 440.19(2), the statute of limitations is no bar." *Id.* (emphases added). Our court has repeated this interpretative error ever since. In *Philip,* for example, we settled for a reference to legislative intent and simply concluded that our construction was a "more reasonable one." 746 So. 2d at 1182 (reading the new term "toll" as having "the effect of extending the limitations period"); *Medpartners/Diagnostic Clinic Med. Grp.*, 23 So. 3d at 204 (referring to the term "toll" as meaning "toll *or* extend" (emphasis supplied)); *Varitimidis*, 58 So. 3d at 407–08; *Sanchez*, 169 So. 3d at 1198 (treating "toll" as meaning "extend").

Our duty, however, is to faithfully apply the plain and ordinary meaning of the enacted text. We discharge that duty now by interpreting the term "toll" in § 440.19(2) in accordance with its accepted meaning to suspend or stop temporarily the limitations period provided in subsection (1). This outcome honors the express relationship established between the limitations period and tolling period prescribed by subsection (2). It also brings this law into conformity with the other limitations provisions in Florida law that establish time-certain tolling periods, such as § 766.106(4), discussed above (setting a ninety-day tolling period for some medical malpractice claims), and § 624.155(3)(e) (setting a sixty-day period for some insurance claims). Under each of these provisions, like with § 440.19, parties must manage two important statutory clocks that run separately: the limitations-period clock and the tolling clock. *Cf. Stimpson v. Ford Motor Co.*, 988 So. 2d 1119, 1121 (Fla. 5th DCA 2008) (quoting 135 Fla. Jur. 2d

Limitations and Laches § 87 (2008) (describing tolling of a limitations period to be "analogous to a clock stopping and then restarting"). And so, here, under § 440.19, after an employee knows or should have known of a qualifying workplace injury, the two-year limitations-period clock begins to run. But then, if an E/C provides benefits after the injury, the limitations-period clock is stopped while the one-year tolling clock begins running (and then restarts after every subsequent provision of a benefit). The limitations-period clock restarts again one year after the provision of the last benefit. In this way, tolling in § 440.19 accords with how tolling statutes normally work; it "suspend[s] the running of the statute of limitations time clock until the identified condition is settled." *Hankey*, 755 So. 2d at 96.

Applying the law to the situation here, the parties agreed that Estes received many workers' compensation benefits for injuries starting within two days of her workplace accident in 2021 for a period extending through January 2023. As a result, the one-year tolling clock promptly stopped the running of the two-year limitations-period clock after the accident until one year after Estes received last of these benefits—through at least January 2024. And so, when Estes filed her PFB in June 2024 (seeking a one-time physician change and benefits for the same injuries), she was only about six months into the running of the two-year limitations-period clock. In other words, the date of her PFB fell squarely within the running of the two-year limitations-period clock, which wouldn't have expired until January 2026 under these facts. For this reason, we set aside the final order's dismissal of the petition.

In reaching this result, we respectfully acknowledge the arguments of our dissenting colleagues on the issue of what tolling means. They assert that we shouldn't depart from the previous cases and that the use of "tolling" in the 1994 revision to subsection (2) didn't alter the mechanics of the old extension-based regime. They point out that our court at times even characterized the pre-1994 extension regime as "tolling" the limitations period. And then, citing "the well-established rule of statutory construction that the Legislature is presumed to be cognizant of relevant judicial decisions when enacting statutes," they assert that statutory construction canons require us to continue elevating our

13

incorrect interpretation of §440.19(2) over its plain and ordinary meaning. *Potter v. Potter*, 317 So. 3d 255, 258 (Fla. 1st DCA 2021).

But the prior-construction canon would not apply here. Although some of our cases referred to "tolling" under the pre-1994 limitations period regime, none of them interpreted the term itself, or supplied a definition of "toll" for the Legislature to latch onto. So that from our sporadic use of "tolling" in the old cases, we can hardly ascribe an intention by the Legislature to abandon its plain meaning and adopt an unconventional definition that our court never adopted prior to the statutory revision. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 322 (2012) (explaining that the prior-construction canon applies when the word or phrase has received "authoritative construction" by the highest court or "uniform construction" by inferior courts).

The dissenters' definition of tolling also fails to account for the Legislature's pivot in the 1994 revision to language that crafted limitations-period primacy in the basic two-year statute of limitations in subsection (1). The Legislature didn't just use the new word "toll" in § 440.19(2) and leave the statute otherwise intact. Rather, it abandoned a regime that previously discarded the base two-year statute of limitations in long-term-injury/benefit situations in favor of extending a wholly discrete series of rolling two-year limitations periods. The revised statute went in another direction. It called for establishing a durable two-year limitations period to serve as the ultimate clock and basis in every case, subject to intermittent stoppages: "Payment . . . or the furnishing of [any benefit] . . . shall toll *the limitations period set forth above* for 1 year from the date of such payment." § 440.19(2), Fla. Stat. (emphasis added). Under this revised § 440.19(2) regime, tolling is always accomplished in reference to the subsection (1) limitations period, which controls as the ultimate arbiter of time. Once the "limitations period set forth above" has run, there is nothing left to toll and tolling becomes unavailable. Conversely, the dissenters' view of tolling promptly displaces "the limitations period set forth above" two years after the workplace injury and resurrects the legislatively replaced successive-extension model by giving a series of rolling one-year extensions to claimants in long-term-injury/benefit situations without regard to the limitations period

in subsection (1). Because the dissenters' view abandons the Legislature's express intention in subsection (2) to have tolling anchored by reference to the subsection (1) limitations period, we must reject it.

We also aren't convinced that the dissenters' economic argument proves that its interpretation is the correct one. While we acknowledge that the Legislature's 1994 revision stemmed from fiscal troubles with Florida's workers' compensation system, both the majority's and dissenters' interpretations here appear to improve the economics of the prior system (though no record evidence specifically addresses the economics of either approach). The dissenters' hypothesis and chart notwithstanding, it isn't for us to decide statutory interpretation questions based upon the economics of things if the plain text of the law fails to support that result. And so here, we must heed the Legislature's decision to craft a tolling provision that establishes the subsection (1) limitations period as the master clock over the possibility that the dissenters' interpretation may be a less costly regime.

Finally on the tolling issue, we understand the dissenters' stare decisis-based preference for us to stick with our previous wrongly decided § 440.19(2) cases. But here "we have chosen to reassess a precedent and have come to the conclusion that it is clearly erroneous." *State v. Poole* 297 So. 3d 487, 506-07 (Fla. 2020). Now, "[t]he proper question becomes whether there is a valid reason *why not* to recede from that precedent." *Id.* (emphasis in original). The critical consideration here is reliance. *Id. Poole* instructs that reliance interests are at their lowest in cases "involving procedural . . . rules," which is exactly what is at stake with § 440.19's statute of limitations regime. With low-stakes reliance interests in view, we must elevate the goals of correctly interpreting § 440.19's limitations-period regime, which vindicates the Legislature's preferred parameters for this regime. We therefore hold en banc that the tolling provision in § 440.19(2) suspends or stops temporarily the limitations-period clock established in subsection (1), instead of extending separate one-year limitations periods for claimants to file claims in these cases.

B.

15

In reaching this conclusion, we likewise reject the E/C's alternative argument that characterizes this whole case as one big compensability issue to which § 440.19(2)'s tolling provision doesn't apply. While it is true that tolling under § 440.19(2) doesn't apply to the issue of compensability, here, the compensability of Estes's original trip-and-fall injuries was settled long ago and isn't at issue. There has been no evidence presented—to this point at least—that this case involves any different injury or accident to which a separate compensability determination might apply. And Estes needn't re-establish the compensability of the same injuries. *See Meehan v. Orange County Data & Appraisals*, 272 So. 3d 458, 461 (Fla. 1st DCA 2019) (discussing how "once a claimant has established compensability of an injury . . . the E/C cannot challenge the causal connection between the work accident and the injury [but] may only question the causal connection between the injury and the requested benefit"). We must be careful here not to "[blur] the distinction between compensability and entitlement to benefits." *Checkers Rest. v. Wiethoff*, 925 So. 2d 348, 349–50 (Fla. 1st DCA 2006); *Pinellas Cnty. Transit Auth. v. Jackson*, 424 So. 3d 984, 986 (Fla. 1st DCA 2025 (specifying that "[c]ompensability involves the work-place-related existence and cause of an injury and not benefits-entitlement issues").

Under the facts here, the E/C accepted compensability of Estes's workplace injuries immediately after the accident and then paid for treatment and benefits for sixteen months. *See* § 440.34(3)(c), Fla. Stat. (1994) (referring to the "issue of compensability" where "a carrier or employer denies that an accident occurred for which compensation benefits are payable"). In turn, the E/C conceded Estes's injury to be "accepted as compensable" in the pretrial stipulation in this case: it marked "X" in "Yes" box and left the "No" box empty. It also agreed that the following injuries or conditions are accepted as related to the accident: "E/C/SA: Exacerbation of the Right Knee" (while the E/C also noted, fairly enough, that it "has not accepted compensability for those conditions deemed to be unrelated, pre-existing or degenerative in nature and/or barred by the Statute of Limitations"). On the average weekly wage issue the parties' pretrial stipulation differed only as to the amount involved: Estes claimed a base wage of $1527.30, and the E/C claimed $1112.56. And so, the parties agreed that Estes's PFB involved already-

16

compensable injuries, even if the parties differed about her right to (and the amount of) specific benefits associated with these injuries.

Of course, the JCC put to the side all the substantive issues in this case, so we know very little about Estes's claims. The *only* issue teed up by the parties' stipulation was the E/C's statute of limitations defense and *how* § 440.19(2)'s tolling provision applied (both parties agreed that it applied). According to the E/C's stipulation:

> The [E/C] established a prima facie case that the PFB is barred by the Statute of Limitations as the date of the accident was over two years ago on 9/30/2021; the last medical provision provided to the Claimant was on 1/26/2023. Therefore the SOL expired on 1/26/2024. The Claimant's PFB was not filed until 6/13/2024.

With this stipulation the E/C conceded that the tolling provision applied here to extend the statute of limitations to 1/26/2024, but no further. And so, both sides agreed that the tolling provision applied here, just for different periods based on their different interpretations of "toll." This is different from the dissenters' view of compensability that the tolling provision never applied here.

We acknowledge the dissenters' repeated assertions that Estes made pivotal stipulations about compensability that totally control this case. But the record doesn't show it. We can find no such stipulation from Estes. Consider the PFB. Estes listed eight claims stemming from her compensable accident and injuries. She sought various indemnity benefits, a one-time-change of her orthopedic physician "to evaluate and treat claimant's work-related injuries," attorneys' fees and costs, and "authorization and determination of financial responsibility" of claimant's knees and right wrist (original injuries). Even if these benefit claims might require a major contributing cause analysis to determine Estes's entitlement to additional benefits, they do not resurrect the long-settled compensability issue.

We also understand that Estes's PFB stated a ninth, single claim for "compensability" apparently covering the already-

17

accepted knees and wrist. But the scope of this claim hasn't been fleshed out in the record because the JCC didn't take evidence or address any substantive claims. This claim was asserted against a backdrop of the E/C accepting and providing extensive benefits for 17 months before filing a notice of denial of compensability and unilaterally declaring that Estes "no longer needs additional medical treatment for the work-related [2021] injury." Of course, an E/C cannot just reject compensability of a long-accepted compensable injury. "Once compensability of a work accident is established, an E/C may no longer contest that the accident is the MCC of the injuries." *Teco Energy, Inc. v. Williams*, 234 So. 3d 816, 820–21 (Fla. 1st DCA 2017). And thus, it appears that the PFB sought to resolve the E/C's supposed "denial" of already-accepted injuries which wouldn't involve making a new compensability determination. *Id.* (noting under § 440.20(4) that "a carrier who fails to deny compensability within that 120 days after the initial provision of benefits waives the right to deny compensability"); *see also Babahmetovic v. Scan Design Fla. Inc.*, 176 So. 3d 1006, 1008 (Fla. 1st DCA 2015) (addressing an error that "came about by the JCC's conflating the existence and cause of the [work] *injury*— compensability—with the existence and cause of the *need for treatment*") (emphasis in original).[3]

---

[3] Appellant's Reply Brief outlined the dangers of accepting the E/C's argument and transforming ordinary MCC benefit-entitlement issues into compensability issues in long-term injury cases:

> Were it as argued by Appellees, there would be no reason for a carrier to provide any benefits after two years in any case, ever; it could simply incant "compensability denial" at, near, or after, the conclusion of two years, stop paying benefits, and thereby close the courthouse doors … forever. The statutory language does not strip the JCC of authority to adjudicate claims of entitlement to benefits that might bear some relationship to compensability, MMI, or permanent impairment—as this describes all benefits available under chapter 440 after two years. Notably, the tolling provisions of section 440.19(2) will operate to extend time most frequently in cases with permanent compensable injuries. The tolling

18

Conversely, there is no evidence at this point that Estes's case involves a subsequent or different injury than was already accepted by the E/C. And so, we cannot see characterizing Estes's whole case as a compensability issue and dismissing it on statute of limitations grounds. The compensability reference in one of Estes's claims shouldn't have been applied to subsume Estes's benefit-entitlement claims, or to preclude her altogether from receiving the benefit of § 440.19(2)'s tolling provision. This is easiest to see with Estes's one-time physician change claim, which can hardly be considered a compensability issue. *See Babahmetovic*, 176 So. 3d 1006 (noting that a one-time change in physicians is awardable when a compensable injury exists irrespective of whether a prior physician thinks that the injury is no longer the major contributing cause of the need for future medical care).

We likewise reject the dissenters' imputation of an election of remedy waiver against Estes based on the JCC's bifurcation of the trial. No support is cited for this proposition. And here, nothing indicates that Estes offered a stipulation about compensability as a condition or prerequisite for gaining a bifurcated hearing. The bifurcation motion itself says nothing of being predicated on a compensability determination. Nor did the JCC's resultant order. There is also no rule requiring a compensability issue to exist before a JCC can bifurcate a trial. Here, ordinary efficiency concerns seemed to motivate the decision to separate out the statute of limitations issue for trial, which was a perfectly fine and reasonable way to handle things. Nor did appealability of the final order hinge upon a compensability issue. The final order was appropriately appealed under Fla. R. App. P. 9.180(b)(1) as a final order. It was *not* a non-final order appealed under (b)(1)(C)'s "compensability" provision. All to say, Estes didn't execute some election of remedies waiver here.

---

provision cannot cannibalize itself. Nor could it strip a JCC of jurisdiction to decide the merits of a limitations defense (especially if predicated on a falsity).

19

Moving on, the dissenters needn't fear that this opinion alters what we have said in other cases about compensability and MCC issues. We haven't. The E/C's acceptance of Estes's workplace injury did not constitute an agreement for the E/C to provide *any and all* requested treatments or benefits. The E/C remains free to assert that the accident-related injury isn't connected with or didn't create the need for a specific requested benefit. *See Checkers Rest.*, 925 So. 2d at 349 (noting the "[o]ther issues" beyond the injured worker's entitlement to benefits that "remain subject to challenge, including the extent of the compensable injury and the causal relationship between the compensable injury and the condition for which the worker seeks benefits"). And if the work related injury has combined with a preexisting disease or condition to cause or prolong disability or the need for treatment, then the E/C must pay benefits "only to the extent that the injury arising out of and in the course of employment is and remains more than 50 percent responsible for the injury as compared to all other causes combined and thereafter remains the [MCC] of the disability or need for treatment." § 440.09(1), Fla. Stat.; *Teco Energy*, 234 So. 3d at 821. Should a new compensability issue appear, then the E/C may freely accept or deny compensability if and when the new injury arises. *Id.* at 822; *McIntosh v. CVS Pharmacy*, 135 So. 3d 1157, 1159 (Fla. 1st DCA 2014) (noting that "[i]t was of no consequence that compensability [of the claimant's PTSD] was sought long after the date of the accident; the relevant inquiry is whether the E/C denied compensability within 120 days of first providing treatment for the PTSD"). Our discussion of compensability here affects none of this.

Instead, from the limited evidence available here, we fail to see a controlling compensability issue that forecloses the application of § 440.19(2)'s tolling provision and requires this entire case to be dismissed with prejudice on statute of limitations grounds. Rather, the E/C accepted the 2021 accident, resulting in a compensable injury with benefits provided. Estes's 2024 PFB sought additional benefits stemming from the same accident and injury, which should have received the benefit of § 440.19(2)'s tolling provision, notwithstanding that she pressed one currently unelaborated "compensability"-related claim. That single claim doesn't alone control the statute of limitations question for Estes's other claims. If this "compensability" claim turns out to involve

20

some new injury, then the parties and the JCC can address it under existing law.

## III.

For these reasons, we will set aside the final compensation order and remand it for further consideration consistent with this opinion.

We acknowledge the dissenters' dislike for "setting aside" the final order of the JCC as opposed to "reversing" it. In this decision, we have identified a threshold legal error in the JCC's order—the erroneous application of the limitations-period statute—and have set aside the order that dismissed Estes's petition on statute of limitations grounds. The JCC did not touch the merits of Estes's petition, and we've disturbed nothing on the substantive front. From here, the case will return to the administrative tribunal, where presumably the parties and JCC will account for our decision and proceed consistent with the JCC's authority and discretion under the applicable statutes and rules. Beyond setting aside the JCC's order for legal error, we do not presume to direct the JCC, an administrative officer of the executive branch, how to perform his statutory duties on remand. *See Florida Fish & Wildlife Conservation Comm'n v. Daws*, 256 So. 3d 907, 917 (Fla. 1st DCA 2018) ("The judiciary violates the doctrine of separation of powers if it directs an administrative agency to perform its duties in a particular manner.").

We've discussed before the broader issue of why we "set aside" workers' compensation orders instead of reversing them. We do so in deference to separation-of-powers principles and the statutes under which we review the orders of JCCs and similarly situated administrative hearing officers. *See Hernandez v. Fla. Dep't of Management Servs.*, 355 So. 3d 465, 473 (Fla. 1st DCA 2022) (describing that "[i]n an administrative appeal, we have the authority, among other things, to "set aside agency action," to "decide the rights, privileges, obligations, requirements, or procedures at issue between the parties," and to order "such ancillary relief as the court finds necessary to redress the effects of official action wrongfully taken or withheld") (quoting § 120.68(6)(a), Fla. Stat.); *Ortiz v. Winn-Dixie, Inc.*, 402 So. 3d 301,

21

311 n.7 (Fla. 1st DCA 2024) (explaining the rationale for setting aside the orders of JCCs). Because the Office of the Judges of Compensation Claims lies within the executive branch, its final orders are matters of administrative law. *See* § 440.45(1)(1), Fla. Stat. ("There is created the Office of the Judges of Compensation Claims within the Department of Management Services."). Under Chapter 440, a JCC may take evidence and adjudicate these cases consistent with statutory duties and issue orders that are effective within the executive branch. But this authority goes only so far as necessary to determine a claim under chapter 440. Stated differently, a JCC, as authorized by the Legislature, can conclusively adjudicate disputed facts involving the benefits that turn on those facts, but cannot issue judgments the same as an Article V court. *Cf. Gordon v. Gordon*, 59 So. 2d 40, 43 (Fla. 1952) ("[W]hen a final decree or judgment of a court of competent jurisdiction becomes absolute it puts at rest and entombs in eternal quiescence every justiciable, as well as every actually adjudicated, issue."). Indeed, to enforce an order of a JCC, a claimant must seek relief from an Article V court. *See* § 440.24(1), Fla. Stat. (granting jurisdiction to circuit courts to issue a rule nisi to enforce the terms of a final compensation order); *Metro. Dade Cnty. v. Rolle*, 661 So. 2d 124, 127 (Fla. 1st DCA 1995) ("It is settled that a judge of compensation claims has no jurisdiction even to enforce [a] prior compensation order since the sole remedy for enforcement is by the procedure outlined in subsection 440.24(1), Florida Statutes.") (citations omitted); *see also Staffing Concepts Intern., Inc. v. Paul*, 704 So. 2d 691, 692 (Fla. 3d DCA 1997) ("[A] circuit court's inquiry in a rule nisi proceeding is confined to whether there is a valid workers' compensation order in effect and whether there was a default of that order.").

The Legislature has authorized this court to hear "appeals" from OJCC orders. *See* § 440.271, Fla. Stat. With cases from administrative tribunals, different from our authority to review judgments and other final orders of trial courts from within our own branch of government, our authority to review orders are a function of statute—termed "judicial review" of administrative action. *See* Art. V, § 4(b)(2), Fla. Const. There is no legislative guidance or statutory parameters for reviewing the administrative orders rendered under chapter 440. But our authority in this administrative context closely resembles what occurs in our review

22

of orders under the Administrative Procedure Act ("APA"), where the Legislature has set forth various authorized remedies. *See* § 120.68(7), (8), (10), Fla. Stat. (setting forth the court's authority to "affirm," "set aside," "remand," and "modify" as authorized remedies). We glean from this sister statute our authority to "set aside" administrative action when it "has erroneously interpreted a provision of law and a correct interpretation compels a particular action," or when the "agency's exercise of discretion was . . . [o]utside the range of discretion delegated to the agency by law" or "[o]therwise in violation of a constitutional or statutory provision." § 120.68(7)(d), (e), Fla. Stat. Based on this legislative authorization to review the JCC's order and in recognition of Florida's strict separation of powers, we set aside the order and go no further by directing the OJCC on how to exercise their statutory duties on remand.

SET ASIDE and REMANDED for further consideration consistent with this opinion.

LEWIS, ROBERTS, ROWE, RAY, WINOKUR, NORDBY, LONG, and TREADWELL, JJ., concur.

BILBREY, J., dissents with an opinion in which M.K. THOMAS, J., joins.

M.K. THOMAS, J., dissents with an opinion in which BILBREY, J., joins.

KELSEY, J., recused.

NEFF, J., did not participate.

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____

BILBREY, J., dissenting.

I join Judge Thomas' opinion in full. Because the tolling period does not apply to issues of compensability, we should not be considering tolling under section 440.19(2), Florida Statutes. Nonetheless, the en banc majority recedes from our precedent interpreting that subsection.[1] Because the majority unnecessarily recedes from our easy-to-apply precedent, installs a regime that will be difficult if not impossible to apply in workers' compensation cases, and potentially eliminates the statute of limitations in many cases, I respectfully dissent.

The issue in dispute is the application of section 440.19, Florida Statutes, to the facts here. As the majority opinion points out, that section was substantially amended in 1993, effective January 1, 1994, and has not been amended since gender-neutral language was added in 1997. *See* Ch. 93-415, §§ 23, 112, Laws of Fla.; ch. 97-103, § 113, Laws of Fla. The subsections at issue read:

> (1) Except to the extent provided elsewhere in this section, all employee petitions for benefits under this chapter shall be barred unless the employee, or the employee's estate if the employee is deceased, has advised the employer of the injury or death pursuant to s. 440.185(1) and the petition is filed within 2 years after the date on which the employee knew or should have known that the injury or death arose out of work performed in the course and scope of employment.

---

[1] While I respectfully disagree with the majority's decision to recede from our precedent, I do appreciate the majority opinion acknowledging the precedent and addressing it directly. En banc consideration "is designed to help the district courts avoid conflict, assure harmonious decisions within the courts' geographic boundaries, and develop predictability of the law within their jurisdiction. Consistency of decisions within each district is essential to the credibility of the district courts." *Chase Fed. Sav. & Loan Ass'n v. Schreiber*, 479 So. 2d 90, 93 (Fla. 1985).

(2) Payment of any indemnity benefit or the furnishing of remedial treatment, care, or attendance pursuant to either a notice of injury or a petition for benefits shall toll the limitations period set forth above for 1 year from the date of such payment. This tolling period does not apply to the issues of compensability, date of maximum medical improvement, or permanent impairment.

Before section 440.19 was amended, the word "toll" was not present in the statute. Section 440.19(1)(a), Florida Statutes (1993), provided a two-year limitation period except "a claim may be filed within 2 years after the date of the last payment of compensation or after the date of the last remedial treatment furnished by the employer." Our cases called this extension "toll" and used that word to mean "extend," rather than "suspend." *See, e.g.*, *Sol Dale Bldgs., Inc. v. Schweickert*, 656 So. 2d 606, 609 (Fla. 1st DCA 1995) ("[I]t is the furnishing of the treatment, not the billing or reporting, that tolls the statute."); *Taylor v. Metro. Dade Cnty.*, 596 So. 2d 798 (Fla. 1st DCA 1992) (reversing for further proceedings to determine whether the use of a medical device provided "a basis for tolling the statute"); *Seamco Laboratories, Inc. v. Pearson*, 424 So. 2d 898, 899 (Fla. 1st DCA 1982) ("[T]reatment by an authorized physician within the two-year period was sufficient to toll the running of the statute.").

The majority holds that the amendment to section 440.19(2) adding the word toll changed the meaning of the word from how we had used it in previous cases. This is inconsistent with "the well-established rule of statutory construction that the Legislature is presumed to be cognizant of relevant judicial decisions when enacting statutes. In fact, the Legislature will be presumed to *adopt* those relevant prior judicial decisions unless the contrary is expressed." *Potter v. Potter*, 317 So. 3d 255, 258 (Fla. 1st DCA 2021). In adding the word toll, the Legislature was not altering our application of the extension period that was previously present. Rather, the Legislature was codifying our previous holdings.

Following the 1993 amendment to section 440.19(2), we have repeatedly read the tolling provision to mean extend rather than

25

suspend.  *See Sanchez v. Am. Airlines*, 169 So. 3d 1197, 1197 (Fla. 1st DCA 2015) ("[S]ubsection (2) provides that the only events that will extend the statute of limitations are the payment of indemnity benefits or the furnishing of medical treatment."); *Varitimidis v. Walgreen Co./Sedgwick Claims Mgmt. Services, Inc.*, 58 So. 3d 406, 407–08 (Fla. 1st DCA 2011); *Medpartners/Diagnostic Clinic Med. Grp. v. Zenith Ins. Co.*, 23 So. 3d 202, 204, 206 (Fla. 1st DCA 2009); *Claims Mgmt., Inc. v. Philip*, 746 So. 2d 1180, 1181 (Fla. 1st DCA 1999); *Orange Cnty. Sch. Bd. v. Best*, 728 So. 2d 1186, 1188 (Fla. 1st DCA 1999).  Although not discussed in any of those cases, tolling in a workers' compensation case applies many more times than other instances of tolling.  This is because there are usually many times in a typical workers' compensation case when payments are made or treatment is supplied to a claimant.

We have also called an extension of time tolling in a different context.  In *Syfrett v. Syfrett-Moore ex rel. Estate of Syfrett*, 115 So. 3d 1127, 1131 (Fla. 1st DCA 2013), we discussed rule 1.140(a)(3), Florida Rules of Civil Procedure.  That rule applies when a defendant files certain motions directed to the complaint. The rule extends the time for a defendant to serve a responsive pleading until "10 days after the filing of the court's order" denying or postponing disposition of the motion.  *Id.*  In discussing the impact of this rule we stated, "Thus, because Appellant had not yet answered the complaint **due to the tolling** by her motion to dismiss, Appellee had to establish that there was no answer that Appellant could serve and no affirmative defense that she could allege which would raise an issue of material fact."  *Syfrett*, 115 So. 3d at 1131 (emphasis added).  We further stated, "This **tolling** is important because the summary judgment standard changes under these circumstances."  *Id.*  (emphasis added).

The majority opinion has tolling suspend the running of the two-year limitation period but only based on the last payment to a claimant.  With respect, even if toll is read to mean suspend, the whole of section 440.19(2) must still be applied.  "All parts of the statute must be given effect, and the Court should avoid a reading of the statute that renders any part meaningless. . . . Moreover, 'all parts of a statute must be read together in order to achieve a consistent whole.'"  *Searcy, Denney, Scarola, Barnhart & Shipley, etc. v. State*, 209 So. 3d 1181, 1189 (Fla. 2017) (citation omitted).

26

"Payment of **any** indemnity benefit or the furnishing of remedial treatment, care, or attendance pursuant to either a notice of injury or a petition for benefits shall toll the limitations period set forth above for 1 year **from the date of such payment**." § 440.19(2), Fla. Stat. (emphasis added). So each time a claimant receives an indemnity benefit or is furnished treatment, another year should be added from the date of such payment to the tolling timer that the majority opinion creates. This would effectively eliminate the statute of limitations in most workers' compensation cases.

The provisions of section 440.19 at issue were amended in a special session called November 1993. In adopting the substantial amendments to chapter 440 contained in Laws of Florida 93-415, the Legislature made numerous findings. Among the findings by the Legislature were "that there is financial crisis in the workers' compensation industry" and that "the magnitude of these compelling economic problems demands immediate, dramatic, and comprehensive legislative action." *Id.* If toll means suspend, as the majority decides, then per section 440.19(2) every "[p]ayment of any indemnity benefit or the furnishing of remedial treatment" suspends the limitation period for one year. In most cases the limitations periods may be extended for a great many years. It would be odd if in the midst of a crisis in the workers' compensation industry, the Legislature intended to greatly extend the statute of limitations for claims.

To properly calculate suspension of time under the majority opinion's new system will require keeping track of multiple timers. *See Ortiz v. Winn-Dixie, Inc.*, 361 So. 3d 889, 893 (Fla. 1st DCA 2023), *opinion superseded on reh'g*, 402 So. 3d 301 (Fla. 1st DCA 2024). This will be burdensome for the parties and judges. Consider a simplified application of the multiple timer system to the facts here:

| Event | Date | Multiple timer suspension method | Previous extension method |
|---|---|---|---|
| Industrial Accident: | 9/30/2021 | Start of two-year statute of limitations (SOL) clock. § 440.19(1) | Start of SOL. § 440.19(1) |

| First treatment: | 10/2/2021 | Applying tolling in § 440.19(2) suspends the limitation period one year. Only three days have run on SOL two-year clock. | |
|---|---|---|---|
| | 10/1/2022 | Suspension period that started 10/2/2021 ends. Two-year SOL clock starts running again. | |
| Last indemnity benefit: | 1/13/2023 | Applying tolling in § 440.19(2) suspends limitation period one year. 107 total days have run on SOL clock. § 440.19(1). | |
| Last provision of treatment | 1/26/2023 | SOL suspended since 1/13/2023. Another year suspension added by tolling under § 440.19(2). So SOL currently suspended for one year and 352 days. | |
| | 9/30/2023 | | Ends the two-year limitation period in § 440.19(1). SOL has run but is tolled |

28

| | | | |
|---|---|---|---|
| | | | meaning extended. |
| | 1/26/2024 | | Ends one-year extension from last provision of treatment on 1/26/2023 provided by § 440.19(2). Tolling has expired. |
| First petition for benefits | 6/13/2024 | Timely. | Time barred. |
| | 1/12/2025 | Three suspension periods from payment of indemnity benefit and provision of treatments end. SOL clock resumes running. Will end 9/27/2026 if no further suspensions. | |

Using the multiple timer suspension method, the limitation period for Estes is more than two and a half years longer than using the extension method that we have used for over 25 years per *Philip*, 746 So. 2d at 1181–82, and *Best*, 728 So. 2d at 1188. But the calculations in the above chart are an oversimplification since each "indemnity benefit or the furnishing of remedial treatment, care, or attendance" would add another year of suspension to the limitation period under the majority opinion's multiple clock method. The record shows that the E/C provided payments for treatment well over 150 times for Estes. Reading toll as suspend and applying all of section 440.19(2) would in effect

29

eliminate the application of the statute of limitations here by providing over 150 separate one-year suspensions of the timer.

But even if only one suspension period applies, the majority opinion's multiple timer method will be difficult to apply. The approach that the majority adopts was first proposed not by any party, but by then Judge Tanenbaum in *Ortiz v. Winn-Dixie, Inc.* 361 So. 3d at 893–94, *opinion superseded on reh'g*, 402 So. 3d at 302.[2] He explained the scheme as follows:

Imagine a two-year master countdown timer starting to run on the date of the accidental injury, as we just described. Once the employee files a petition (like Ortiz presumably did in 2003), that two-year timer is stopped with respect to the claim or claims raised therein as they await administrative disposition. Consider that stoppage, though, as if it were a split time—stoppage only with respect to that original PFB. The master timer nevertheless continues counting down with respect to any later claim arising out of the same accident. The master timer then stops counting down each time the employer furnishes a benefit pursuant to the original PFB. When that happens, a separate *tolling* timer *starts* counting down instead. If, while the tolling timer is running, the employer furnishes another benefit (either an indemnity payment or some care or treatment), the timer resets to one year and starts counting down again.

By the very nature of tolling (defined above in the margin), the limitation timer and the tolling timer run in opposition to each other: They cannot both run at the same time. That means as the tolling timer is running, the limitation timer is stopped with whatever time was

_____

[2] An appellate court may "take judicial notice of their own records." *Hillsborough Cnty. Bd. of Cnty. Comm'rs v. Pub. Emp. Rel. Comm'n*, 424 So. 2d 132, 134 (Fla. 1st DCA 1982). The claimant in *Ortiz* did not argue that toll in section 440.19(2) meant suspend or that our line of cases from *Best* and *Philip* interpreting section 440.19(2) should be overruled.

remaining when the tolling timer started.  When the one-year tolling timer reaches zero and has not been reset by the employer's furnishing of another benefit, the master two-year limitation timer starts counting down again from where it left off.  Until a point is reached where both timers reach or remain at zero together (that is, time has run out on both timers simultaneously), the one-year timer can continue to be reset and run for as long as the employee continues under an award of benefits.

*Ortiz*, 361 So. 3d at 893.

Ortiz moved for rehearing.  The E/C in *Ortiz*, which had prevailed in the initial opinion, also argued that rehearing should be granted, stating in part:

The undersigned attorney, a board-certified workers' compensation expert with thirty-three years of experience, cannot apply what has been written by the Court.  For the first time, the Court has created the master timer, the tolling timer, and the limitation timer, each of which may oppose or defeat the other and that are subject to being reset.  This new paradigm, which requires a exceedingly complex factual and legal analysis, is inconsistent with the Legislature's express intent that the workers' compensation system be "efficient and self-executing."  Section 440.015, Fla. Stat.  The law is intended to be applied in a manner "which facilitates the self-execution of the system and the process of insuring (sic) a prompt and cost-effective delivery of payments." *Id.*

The court in *Ortiz* then withdrew its opinion and issued a new opinion on rehearing in which the majority there did not adopt the multiple timer system.  402 So. 3d at 302–11.  A special concurrence continued to argue for its adoption.  *Ortiz*, 402 So. 3d at 312 (Tanenbaum, J., specially concurring).  Today the majority opinion adopts this multiple timer system despite the criticism from even the party that initially prevailed using that system in *Ortiz*.

31

It would be much simpler for the participants in the workers' compensation system if we continued to use the extension method that has been in effect for over 25 years. The last date that the E/C supplied a benefit to a claimant is easy to find, making the limitation period in section 440.19(1) and tolling in section 440.19(2) easy to apply using our established extension method. *See Best*, 728 So. 2d at 1188 ("A petition is timely if filed within two years of the date of accident or, even thereafter, if filed within one year of the last date the petitioner received medical treatment or indemnity benefits.").

Finally, a word on stare decisis. Even if the more common use of the word toll means suspend, we should apply stare decisis to keep the definition of toll in section 440.19(2) as meaning extend. "[C]onsiderations of stare decisis weigh heavily in the area of statutory construction" since the legislative branch can alter a court's "interpretation of its legislation." *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 736 (1977) (citations omitted). The Legislature has had decades to amend section 440.19(2) to change our holdings in *Best* and *Philip* if it wished but has not done so.

I recognize that following the decision in *State v. Poole*, 297 So. 3d 487 (Fla. 2020), the doctrine of stare decisis has lost some of its force under Florida law. "But once we have chosen to reassess a precedent and have come to the conclusion that it is clearly erroneous, the proper question becomes whether there is a valid reason *why not* to recede from that precedent." *Id.* at 507. The Supreme Court in *Poole* answered its question by stating, "The critical consideration ordinarily will be reliance. It is generally accepted that reliance interests are 'at their acme in cases involving property and contract rights.'" *Id.* (citing *Payne v. Tennessee*, 501 U.S. 808, 828 (1991)).

If toll in section 440.19(2) means suspend, and if suspension applies each time an E/C provides "any indemnity benefit or the furnishing of remedial treatment, care, or attendance," then many limitations periods will be revived in cases where an E/C thought they had run long ago. "Once the defense of the statute of limitations has accrued, it is protected as a property interest just as the plaintiff's right to commence an action is a valid and

protected property interest."[3] *Wiley v. Roof*, 641 So. 2d 66, 68 (Fla. 1994). As a protected property right, reliance interests are at their highest, as the Florida Supreme Court noted in *Poole*. 297 So. 3d at 507. So stare decisis should apply to maintain that reliance interest.

In conclusion, we should not be considering the tolling provisions in section 440.19(2) because this case concerns compensability. But even if we are going to apply tolling here, for the above reasons we should not recede from our precedent defining it as extend. I respectfully dissent from the majority's decision to do so.

M.K. THOMAS, J., dissenting.

I respectfully dissent from the majority opinion that the PFB is not barred by the statute of limitations (SOL) set forth in section 440.19, Florida Statutes (2021). On this record, we are compelled to affirm.

Estes stipulated below that the PFB raised an "issue of compensability," without limiting or qualifying language. This unbounded stipulation disqualified her from taking advantage of the tolling provision of section 440.19(2), Florida Statutes (2021). Her own stipulation means she cannot argue the opposite now—that the PFB did *not* raise compensability—so as to benefit from the tolling provision of 440.19(2). But even if Estes is not bound by her stipulation and the tolling provision is properly before us, the majority opinion 1) misconstrues "compensability" contrary to precedent of this Court and fails to recognize the critical distinction between the SOL as a bar to filing PFBs versus compensability as a substantive legal determination; and 2) erroneously redefines "toll" in section 440.19(2), negatively impacting the self-executing nature of the workers' compensation system. Contrary to the majority's recognition that in 1994 the Legislature "took a stricter tolling approach," "tightened the

---

[3] I therefore respectfully disagree with the majority opinion that application of the statute of limitations is merely a procedural issue not implicating reliance interests.

33

statute of limitations provision," and "reined in a previously more claimant-friendly regime," its redefinition of "toll" does the opposite. The new "toll" effectively dissolves the SOL—expanding the PFB filing window and setting forth an over-engineered method of calculation.

*Stipulation—PFB Raises An "Issue of Compensability"*

The Employer/Carrier (E/C) accepted Estes's 2021 work accident as compensable and provided indemnity and medical benefits. But two years later, the E/C denied her request for benefits related to right knee complaints. As a result, Estes filed a PFB specifically raising the issue of "compensability of her left knee, right knee, and right wrist injuries," among a litany of other claims. The E/C defended by asserting the PFB was barred by the SOL.

Here is the relevant timeline:

9/30/2021   Date of accident; E/C accepted the accident as compensable and provided benefits for left knee, left wrist, and right knee injuries.

1/26/2023   Estes's last receipt of workers' compensation benefits.

2/08/2023   E/C filed a formal Notice of Denial asserting the work accident was no longer the major contributing cause (MCC) of the right knee condition and no further benefits or treatment would be provided.

6/13/2024   Estes filed a PFB requesting indemnity and medical benefits from the date of accident forward, specifically raising "compensability of claimant's left knee, right knee and right wrist injuries"; financial responsibility of further medical care; authorization of doctors to treat the injuries, to include the denied right knee injury and indemnity benefits; and other claims.

6/17/2024   E/C filed Response to PFB, raising SOL defense as a bar to Estes's claims.

| 10/2/2024 | Estes moved to bifurcate the merits hearing, certifying that the PFB asserted an issue of compensability. |
|---|---|
| 10/2/2024 | JCC issued an Order Granting Claimant's Agreed Motion to Bifurcate Issues for Merit Hearing, stating that "Should the claim be determined compensable, I find that the determination of the exact nature and the amount of the benefits due to [Estes] will require substantial expense and time for all parties. Florida Rule of Appellate Procedure 9.180(b)(1)(C). . . . The 12/10/24 Final Merit Hearing will only address the Employer/Servicing Agent's defenses that [Estes's] claims are barred by the Statute of Limitations. . . . Jurisdiction is reserved on the remaining issues claimed in the petition for benefits filed on 6/13/24 for a Final Merit Hearing at a later date, if required." |
| 10/14/2024 | Uniform Pre-Trial Stipulation filed, documenting that the compensability issue was raised. E/C denied compensability of the right knee condition on the grounds that the exacerbation period of pre-existing condition had ended, the accident was no longer the MCC of the need for treatment, and the SOL barred all further benefits for all injuries claimed. |
| 12/26/2024 | In the "Bifurcated Final Order," the JCC granted the E/C's defense that Estes's claims were barred by the SOL, denied her claims for attorney's fees, and noted "[Estes's] 6/13/24 Petition for Benefits is hereby *dismissed with prejudice*." (Emphasis added.) |
| 1/3/2025 | Estes moved for rehearing, asserting for the first time that the JCC should not have used against her on the merits her stipulation that the PFB asserted an issue of compensability in support of her request for a bifurcated hearing. The JCC denied the motion. |
| 1/13/2025: | Estes filed her Notice of Appeal, attaching the "Bifurcated Final Order." |

Estes's choice to bifurcate her claims is a legitimate procedural option that splits the merits hearing into two phases. At the initial merits hearing (phase I), only the issue of compensability is litigated, and the JCC reserves jurisdiction over all remaining claims for specific benefits. If the JCC determines the issue of compensability in favor of the claimant in phase I, the reserved claims are litigated at a phase II hearing.[1]

Electing a bifurcated litigation process is voluntary. It determines compensability sooner, which dictates whether it is then necessary to determine entitlement to specific benefits. The split process is attractive because it can avoid costly depositions and other discovery required to parse out entitlement to the benefits reserved for phase II.

As a prerequisite for using the bifurcated hearing option, the party (here Estes) must stipulate that the PFB raises an "issue of compensability." Additionally, a party may appeal the phase I compensability order "provided that the order expressly finds an injury occurred within the scope and course of employment and that claimant is entitled to receive causally related benefits in some amount, and provided further that the lower tribunal certifies in the order that determination of the exact nature and amount of benefits due to claimant will require substantial expense and time." Fla. R. App. P. 9.180(b)(1)(C)[2]; *see also*

---

[1] In 2003, the 60Q rules (Chapter 60Q-6, Florida Administrative Code) replaced the old Florida Rules of Workers' Compensation Procedure. This change resulted from amendment to section 440.45, Florida Statutes, shifting rule-making authority in workers' compensation from the Florida Supreme Court to the Division of Administrative Hearings (DOAH). Bifurcated hearings are available pursuant to the case-management authority granted to Judges of Compensation Claims (JCC) under Florida Administrative Code Rule 60Q-6.113 and section 440.25(4)(d), Florida Statutes.

[2] Rule 9.180(b)(1)(C) permits an appeal of a phase I bifurcated hearing order if the JCC finds an accident occurred within the course and scope of employment, benefits are due of some nature, and that determination of those benefits will require substantial

*Jacksonville Sheriff's Off./City of Jacksonville Risk Mgmt. v. Smith*, 66 So. 3d 410, 410 (Fla. 1st DCA 2011) (dismissing the appeal of a nonfinal order rendered in phase I of a bifurcated merits hearing for lack of jurisdiction because it did not dispose of all matters presented to the JCC for adjudication and did not include the certification required under rule 9.180(b)(1)(C)); *Sun Sentinel & Tribune Co. v. Petrovich*, 744 So. 2d 1056, 1056 (Fla. 1st DCA 1999); *Cadco Builders, Inc. v. Roberts*, 712 So. 2d 457, 458 (Fla. 1st DCA 1998); *Nape v. Mark V Const.*, 696 So. 2d 1233, 1234–35 (Fla. 1st DCA 1997).

The JCC determined that the PFB was barred by the SOL. Accordingly, he dismissed the PFB with prejudice, including the claims reserved for phase II. Thus, the order was final and appealable under rule 9.180(b)(1). If in a bifurcated process, the phase I order determines compensability in favor of the claimant, and the PFB remains viable with specific benefits reserved for phase II, an E/C may appeal such an interlocutory order under rule 9.180(b)(1)(A), (B), or (C).

However, because the majority opinion redefines an "issue of compensability" as only compensability of the accident itself, this bifurcated hearing process will no longer be available for litigation of SOL defenses, among others. Regardless of the subsection of rule 9.180 supporting the appeal, it remains true that it resulted from a bifurcated process based on Estes's stipulation that the PFB raised an issue of compensability. Florida courts have consistently recognized the general rule that "[a] stipulation properly entered into and relating to a matter upon which it is appropriate to stipulate is binding upon the parties and upon the Court." *Turner v. Miami-Dade Cnty. Sch. Bd.*, 941 So. 2d 508, 509 (Fla. 1st DCA 2006) (quoting *Gunn Plumbing, Inc. v. Dania Bank*, 252 So. 2d 1,

---

expense and time. Accordingly, orders from a phase I hearing that do not find compensability would not be appealable, nonfinal orders under this subsection. Rather, an order denying compensability would automatically convert the phase I order into a final, appealable order under rule 9.180(b)(1).

4 (Fla. 1971)). This Court in *Myrick v. Gillard Grove Service*, 577 So. 2d 655, 656 (Fla. 1st DCA 1991), specifically held that when a party stipulates to an issue like compensability, it "waive[s] the right to make compensability an issue." We reemphasized this rule in *Turner*, 941 So. 2d 508. In *Turner*, accepting compensability "relieved claimant of any obligation to establish compensability" and "precluded the employer and servicing agent from attempting to establish the contrary until and unless that stipulation was set aside." *Id.* at 509.

The binding effect of stipulations extends through appeal, and parties cannot raise issues on appeal that were resolved or set by stipulation below. *See Burnsed v. State*, 743 So. 2d 139, 139–40 (Fla. 2d DCA 1999) ("Where appropriately made, stipulations are binding not only upon the parties but also upon the trial and appellate courts."). As we have declared, parties cannot escape stipulations through "mere change of litigation strategy" and "it is never a court's function to rewrite the terms of an agreement to make it more reasonable." *Marin v. Aaron's Rent to Own*, 53 So. 3d 1048, 1050 (Fla. 1st DCA 2010) (citing *Churchville v. GACS Inc.*, 973 So. 2d 1212, 1216 (Fla. 1st DCA 2008)).

Estes should be bound by her stipulation below and precluded from application—and therefore analysis—of the tolling provision of section 440.19(2). The binding nature of such characterizations prevents parties from manipulating procedural rules by taking inconsistent positions based on strategic advantage. *See Sullivan v. NUC02, LLC/Broadspire*, 308 So. 3d 659, 664 (Fla. 1st DCA 2020) (stating that parties are bound by stipulations even if later evidence would support a different position); *Wren v. DMS, Inc.*, 821 So. 2d 458, 458–59 (Fla. 1st DCA 2002) (holding the JCC erred when it addressed the issue of compensability when the parties had already resolved the question).

This principle is bolstered by the doctrine of election of remedies, which concerns the choice between two or more co-existent and inconsistent remedies that arise out of the same set of facts. Once elected, the remedy bars a later inconsistent position. Although the doctrine of election of remedies is a substantive legal doctrine, the election occurs at a procedural juncture if it reflects a true election between inconsistent

38

substantive remedies. *See Liddle v. A.F. Dozer, Inc.*, 777 So. 2d 421, 421–22 (Fla. 4th DCA 2000) (involving an election of remedies at a procedural juncture of the trial); *Morales v. Zenith Ins. Co.*, 152 So. 3d 557, 564 (Fla. 2014) (noting that settlement of the workers' compensation case is an election of remedies); *see also* § 631.929, Fla. Stat. (instructing that if workers' compensation accident occurred before 1994 and the employer's insurance is insolvent, claimant may elect to pursue benefits from the Workers' Compensation Guaranty Association and forego seeking them from the employer or insolvent fund); § 440.11(2), Fla. Stat. (under the statute, when employer has no coverage, the claimant may choose between civil personal injury action or benefits under Chapter 440). The choice of a bifurcated hearing process in workers' compensation requires a stipulation that closes avenues of relief. Estes asserted a blanket stipulation that the PFB raised an "issue of compensability" with no limitation of any kind. The stipulation should foreclose her ability to argue the opposite on appeal.

Contrary to our own precedent, the majority improperly allows Estes to escape her stipulation and raise new arguments on appeal that were not preserved below. Preservation is fundamental. "In order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved." *Tillman v. State*, 471 So. 2d 32, 35 (Fla. 1985). We strictly enforce the rules of preservation. *See Rosier v. State*, 276 So. 3d 403, 406–07 (Fla. 1st DCA 2019) (emphasizing the necessity that parties preserve specific issues and arguments as a prerequisite to appellate review). We consistently make it clear that counsel must preserve any issue bearing on disposition, or it is waived. *See, e.g., Heart of Live Oak, Inc. v. State of Fla., Off. of Fin. Regul.*, 196 So. 3d 1290, 1290–91 (Fla. 1st DCA 2016) (noting it is well-established that an issue must be raised in the appropriate administrative proceeding to be preserved for appeal).

In the order denying Estes's motion for rehearing, the JCC ruled that rehearing was too late for Estes to retreat from her stipulation and assert an entirely new legal theory after not prevailing at the merits hearing. The JCC's ruling is reviewed only

for abuse of discretion. *See E. Airlines v. Griffin*, 654 So. 2d 1194, 1195 (Fla. 1st DCA 1995); *2K S. Beach Hotel, LLC v. Mustelier*, 291 So. 3d 158, 160 (Fla. 1st DCA 2020). The JCC did not abuse his discretion in holding Estes to her stipulations below. Estes did not address the abuse of discretion review on appeal. Because Estes stipulated below that the PFB raises an issue of compensability, she should be precluded from arguing to the contrary on appeal. Accordingly, we should affirm the JCC's order finding the PFB is barred by section 440.19(1).

*"Issue of Compensability"*

The majority does not bind Estes to her stipulation below, so we move now to the interpretation of the tolling provision itself. The provision specifically excludes three issues from its application: "compensability, date of maximum medical improvement, or permanent impairment." § 440.19(2), Fla. Stat. Of the three exclusions, two are relevant here: compensability and permanent impairment. The majority concludes that the PFB does not raise an issue of compensability, and the tolling provision applies to the SOL analysis here because "the compensability of Estes's workplace injury was settled long ago and isn't at issue." Quoting *Checkers Restaurant v. Wiethoff*, 925 So. 2d 348, 349–50 (Fla. 1st DCA 2006), the majority cautions that "[w]e must be careful not to '[blur] the distinction between compensability and entitlement to benefits.'" But the majority's reasoning misconstrues the distinction and confuses the concept of compensability generally with compensability in the context of a procedural time bar.

Initially, the tolling provision of the SOL does not apply to issues of compensability. *See* § 440.19(2), Fla. Stat. The SOL is a procedural concept establishing a window of time within which a PFB must be filed. Compensability, by contrast, is a substantive legal determination as to whether an injury is covered under chapter 440, Florida Statutes. The SOL does not determine compensability; it only sets a time limit for the filing of a PFB. If a PFB is timely filed, the E/C may still dispute compensability, even years after the accident (if the procedural posture allows). Because compensability is a substantive defense, it is not extinguished by a time limit alone once a valid claim is pending.

40

Likewise, even if an E/C provides medical or indemnity benefits for more than two years, such payment does not automatically establish compensability. "Causation, in workers' compensation, is established by MCC, and MCC is a concept that can apply at two different stages of a determination of entitlement to benefits: work must be the MCC of a compensable injury, and also—where (as here) there is a preexisting condition to the right knee—the compensable injury must be the MCC of the need for treatment." *See Babahmetovic v. Scan Design Fla. Inc.*, 176 So. 3d 1006, 1008 (Fla. 1st DCA 2015).

Until now, this Court declared that compensability encompasses more than whether an accident occurred within the course and scope of employment. We recently acknowledged in another SOL case that the term "compensability" also includes injuries or conditions arising post-accident. *See Ortiz v. Winn-Dixie, Inc.*, 402 So. 3d 301, 308 (Fla. 1st DCA 2024) ("There are few facts we cannot overlook. First, the carrier long ago accepted *compensability* of Ortiz's kidney injury, even stipulating to that compensability in this case." (emphasis added)). In *Ortiz*, the accident itself had long ago been accepted as *compensable*. The issue later before the JCC was compensability of an ongoing kidney condition. *Id.* at 302–03.

This Court has also consistently recognized a broader definition of compensability in cases involving the "120-day rule" of section 440.20(4), Florida Statutes. Under this provision, a carrier may investigate an employee's entitlement to benefits, but must "admit or deny *compensability* within 120 days after the initial provision of compensation . . . ." § 440.20(4), Fla. Stat. (emphasis added). This Court has declared that the provision is not limited to the initial request for benefits following an accident. Rather, it may also be invoked when a new injury or condition later arises and treatment is requested. *See Sierra v. Metro. Protective Servs.*, 188 So. 3d 863, 866–67 (Fla. 1st DCA 2015) (while accident was accepted as compensable, the parties litigated whether later arising PTSD was a compensable condition); *McIntosh v. CVS Pharmacy*, 135 So. 3d 1157, 1159 (Fla. 1st DCA 2014) (explaining that the 120-day pay-and-investigate period relates to compensability of both the initial accident and to a specific

41

condition); *Bynum Transp., Inc. v. Snyder*, 765 So. 2d 752, 754 (Fla. 1st DCA 2000) (holding section 440.20(4) applies to any claim for compensability of any injury made following date of accident, not just the first claim).

The majority's new and narrow interpretation of compensability is dispelled by the operation and language of the tolling provision itself. As its opening phrase instructs, section 440.19(2) only applies if benefits have been paid: "Payment of any indemnity benefit or the furnishing of remedial treatment, care, or attendance . . . . shall toll the limitations period set forth above for 1 year from the date of such payment." § 440.19(2), Fla. Stat. If no benefits have ever been paid following a work accident, the tolling provision is never triggered. Accordingly, to define an "issue of compensability" as limited to only that of the accident itself would render the exclusion meaningless.

Other provisions of chapter 440 establish that compensability is not limited to the initial determination of compensability of the accident itself. Rather, it has a twofold application. It also applies to injuries or conditions that may arise post-accident. The term "compensable" is used in chapter 440 no less than forty times and "compensability" approximately seventeen times. Many of these provisions underscore the same principle: compensability is not limited to the mechanism of the accident itself but must be evaluated anew with each distinct injury or complaint. *See, e.g.,* § 440.09(1), Fla. Stat. ("The employer must pay compensation or furnish benefits required by this chapter if the employee suffers an accidental *compensable injury or death* arising out of the work performed in the course and scope of employment. The injury, its occupational cause, and any resulting manifestations or disability must be established to a reasonable degree of medical certainty, based on objective relevant medical findings, *and the accidental compensable injury* must be the major contributing cause of any resulting injuries." (emphasis added)); § 440.13(1)(d), Fla. Stat. (defining compensable as "a determination by a carrier or judge of compensation claims that a condition suffered by an employee results from an *injury* arising out of and in the course of employment" (emphasis added)); § 440.02(1), Fla. Stat. ("[I]f a preexisting disease or anomaly is accelerated or aggravated by an accident arising out of and in the course of employment, only

42

acceleration of death or acceleration or aggravation of the preexisting condition reasonably attributable to the accident *is compensable, with respect to any compensation otherwise payable under this chapter*." (emphasis added)); § 440.093(2), Fla. Stat. ("Mental or nervous injuries occurring as a manifestation of an injury compensable under this chapter shall be demonstrated by clear and convincing medical evidence . . . ."); § 440.20(4), Fla. Stat. ("Additionally, the carrier shall initiate payment and continue the provision of all benefits and compensation as if the claim had been accepted as compensable, without prejudice and without admitting liability."); § 440.192, Fla. Stat. ("A carrier that does not deny compensability in accordance with s. 440.20(4) is deemed to have accepted the employee's injuries as compensable, unless it can establish material facts relevant to the issue of compensability that could not have been discovered through reasonable investigation within the 120-day period . . . ."). Clearly, the Legislature intended that the term "compensability," if not expressly qualified in context, be multi-faceted.

The PFB not only raised compensability, but also a claim for "Permanent Impairment or Wage Loss" and "permanent impairment benefits," among many other claims. Such a claim is specifically excluded from the tolling provision of section 440.19(2). Therefore, the issue of permanent impairment would independently preclude application of the tolling provision to the SOL analysis here.

The three issues of compensability, MMI, and permanent impairment are excluded from the tolling provision because the SOL is triggered and controlled by specific statutory events and not by resolution of medical or legal disputes. This is where we must distinguish between the SOL as a bar to filing claims and the concept of compensability. The SOL is extended or suspended only by payment of benefits or the filing of a PFB. Disputes about compensability, MMI, or impairment rating do not stop the timer.

If an E/C denies compensability, the claimant must file a PFB within the statutory period. The mere existence of a dispute does not extend the filing deadline. This is logical because allowing a denial to toll the statute would undermine the legislative intent of finality and certainty. For example, MMI is a medical analysis and

assignment. A claimant cannot sit back and wait to reach MMI before filing a PFB for MMI to be established or for impairment benefits to be paid. The statute runs independently of that medical milestone. The SOL is paused only by specific statutory events and does not pause just because compensability is denied or because a claimant has not reached MMI or received an impairment rating. Claimants must actively protect their rights by timely filing a PFB. *See Solar Pane Insulating Glass, Inc. v. Hanssen*, 727 So. 2d 961 (Fla. 1st DCA 1998).

The SOL is a time bar for filing a PFB. It is not concerned with issues of legal dispute but the lapsing of time. The Legislature provided a reminder that issues of compensability, MMI, and permanent impairment (all requiring legal resolution to result in entitlement) are excluded as tolling agents. Only payment dictates SOL calculation (regardless of why paid). However, we must be mindful that the excluded issues do not represent categories in which benefits were never paid. For example, new injuries or newly arising conditions or denials of compensability based on MCC are all included in "issues of compensability" because both result in scenarios of nonpayment of benefits, either initially or later in the claim. Again, the core of SOL is payment. The SOL is a time bar that is altered by payment, when made or suspended—not by a legal determination of entitlement.

Here, the accident was initially accepted as compensable, benefits provided, and the benefits were terminated. It matters not, from a SOL-clock perspective, why the benefits stop. It matters only that the nonpayment prompts the clock to start. The filing of a PFB then stops it. The SOL runs independently of the reasoning behind payment or denial. The burden remains on the claimant to protect their rights by timely filing. Once Estes's benefits ceased on January 26, 2023, the time clock began to tick again. The PFB at issue was untimely because it was filed more than two years after the accident and more than one year after last provision of benefits. The JCC correctly determined that the PFB is barred by the SOL.

Ultimately, even if Estes is not bound by her stipulations below that the PFB raised an issue of compensability, an independent review of the PFB confirms it does raise an issue of

compensability as contemplated by the tolling provision. Accordingly, the tolling provision does not apply, and the PFB is barred. This conclusion is compelled regardless of whether "toll" is defined as suspending or extending. In other words, the language of section 440.19(2) precludes its application in this case because an issue of compensability was raised (and caused benefits to cease thereby activating the SOL). The legal issue of the definition of "toll" is irrelevant to the SOL analysis here. The tolling provision does not apply regardless of how "toll" is interpreted, so we have no cause to define it and must leave it for another day.

*Definition of "Toll" in Section 440.19(2)*

I fully join Judge Bilbrey's thoughtful and well-reasoned dissent. The majority has redefined the term "toll" in section 440.19(2), which we cannot do without receding from precedent. *See Sanchez v. Am. Airlines*, 169 So. 3d 1197, 1198 (Fla. 1st DCA 2015); *Varitimidis v. Walgreen Co./Sedgwick Claims Mgmt. Servs., Inc.*, 58 So. 3d 406, 407–08 (Fla. 1st DCA 2011); *Medpartners/Diagnostic Clinic Med. Grp., P.A. v. Zenith Ins. Co.*, 23 So. 3d 202, 204, 206 (Fla. 1st DCA 2009); *Orange Cnty. Sch. Bd. v. Best*, 728 So. 2d 1186, 1188 (Fla. 1st DCA 1999); *Claims Mgmt., Inc. v. Philip*, 746 So. 2d 1180, 1181 (Fla. 1st DCA 1999).

The majority redefines the term "toll" to mean "suspend." In support, it heavily relies on the language of 440.19(5), Florida Statutes. But this reliance is misplaced because subsection (5) addresses application of the SOL to individuals who are mentally incompetent or are minors. Largely, the text is cited in support of redefining "toll" to mean "suspend" because the provision instructs a specific stopping and starting of the clock and a bank of time, so to speak, while the individual is without a guardian. The subsection applies to a specific class of persons. This case does not involve a guardian.

Construed in context, subsection (5) announces a vastly different treatment for certain qualifying individuals only and adds a critical distinguishing prerequisite. The subsection provides, "If a person *who is entitled to compensation under this chapter* is mentally incompetent or a minor, the limitations period is tolled while that person has no guardian . . . ." § 440.19(5), Fla.

45

Stat. (emphasis added). For this application of the SOL time clock, the person must meet two criteria: 1) be entitled to compensation; and 2) be mentally incompetent or a minor. Entitlement means there is a proven right to the specific benefit. For example, a claimant may be eligible for benefits but has not proven entitlement. *See Guglielmo v. State of Fla.-DOC Zephyrhills CI/Div. of Risk Mgmt.*, 418 So. 3d 656, 667 (Fla. 1st DCA 2025); *ESIS/ACE Am. Ins. Co. v. Kuhn*, 104 So. 3d 1111, 1113 (Fla. 1st DCA 2012). It requires that a legal determination as to entitlement to benefits has occurred. Accordingly, this subsection is inapposite, and no legitimate legal basis exists to apply it to the other subsections and, more specifically, to subsection (2).

I disagree with the notion that the Florida Supreme Court in *Hankey v. Yarian*, 755 So. 2d 93 (Fla. 2000), unequivocally announced a universal definition of "toll" as "to suspend." The language of *Hankey* is intentional and repetitive in emphasizing that its holding is based on the facts of that case and only in the context of section 766.106, Florida Statutes, a medical malpractice statute. Further, the opinion highlighted that its definition was limited to "toll" as used in section 766.106(4), not a universal application. The high court also regarded provisions of section 766.106 to provide *extensions* of the SOL such as paying the court filing fee. *Id. Hankey* did not declare that "toll" means "suspend" in all statutory settings. We previously recognized *Hankey's* limited application in *Patrick v. Lionel Gatien, D.O.*, 65 So. 3d 42 (Fla. 1st DCA 2011).

The "two clock or two timer method" now adopted by the majority is aptly named. It is a reminder that adjusters, claimants, and attorneys will require not one but two "clocks" for every workers' compensation case. An actuarial degree or an "on call" accounting firm will be required to calculate time clock status. To this already troubling picture, add in the requirement of section 440.19(4) that the adjuster must assert the SOL defense in the first responsive pleading to a PFB or the defense is waived. Now, consider that the adjuster is to respond to the PFB within fourteen days of receipt. *See* § 440.192(8), Fla. Stat. Consider the heavy caseload managed by individual adjusters. Lastly, imagine an attorney explaining the SOL to a claimant and how to protect his or her claim. It seems unworkable. And it will be.

For twenty-six years, this Court has correctly defined "toll" under section 440.19(2) as an extension. While I agree with the majority that section 440.19 is not a model of clarity, we had its interpretation right the first time. The redefined SOL "regime" will prove to be operationally dysfunctional and administratively overburdensome. Perhaps there is a basis for supreme court review of this case, and the ship can be righted. Barring that, legislative action will be necessary to restore a workable SOL in workers' compensation cases.

*"Setting Aside" A JCC Order*

A trend emerged in this Court recently of "setting aside" workers' compensation orders (as opposed to reversing and remanding). It began in *Ortiz*:

> This disposition [setting aside], upon issuance of our mandate, renders the order of dismissal a nullity, thereby reopening Ortiz's claim before the JCC. It has the same meaning as "vacate." We use this disposition, rather than "reversed," to reflect our separate authority to review orders of JCCs and other administrative hearing officers. The Office of the Judges of Compensation Claims being in the executive branch, the orders issuing out of that office are matters of administrative law, having effect only within the branch of which it is a part. Unlike our authority to review judgments and other final orders of trial courts within our branch (which otherwise do have legal effect outside the branch), our authority to review orders of administrative tribunals is purely a function of statute, our review being "judicial review" of administrative action. *See* Art. V, § 4(b)(2), Fla. Const. The Legislature in turn has separately authorized this court to hear "appeals" from JCC orders. *See* § 440.271, Fla. Stat. Even though the Administrative Procedure Act ("APA") does not apply in workers' compensation proceedings, we see no reason not to treat our dispositions in appeals from those proceedings any differently than the dispositions authorized by the Legislature for "judicial review" generally in appeals from

administrative proceedings. *See* § 120.68(7), (8), Fla. Stat. (referring to "affirm," "set aside," "remand," "modify," and "ordering" further action as authorized remedies).

*Ortiz v. Winn-Dixie, Inc.*, 402 So. 3d 301, 311 n.7 (Fla. 1st DCA 2024); *see also*, *Fox v. Sarasota Cnty. Sch. Bd.*, 415 So. 3d 736, 738 (Fla. 1st DCA 2025)*; Girardin v. AN Fort Myers Imports, LLC*, 403 So. 3d 255, 257 (Fla. 1st DCA 2025).

The rationale of "setting aside" JCC orders is that the Office of the Judge of Compensation Claims (OJCC) sits in the executive branch, and its orders are "matters of administrative law" that have legal effect only within that branch, making judicial review a purely statutory grant rather than an inherent appellate function. *See* Art. V, § 4(b)(2), Fla. Const. Accordingly, the remedy vocabulary of the Florida Administrative Procedure Act (APA) set the framework for resolution of JCC orders on appeal. But this is ill-conceived. Chapter 440 requires that appeals of workers' compensation cases be treated differently than administrative appeals. A workers' compensation proceeding before a JCC is not analogous with that of an administrative law judge (ALJ). Chapter 440 specifically dictates that the APA does not apply to workers' compensation proceedings. *See* § 440.021, Fla. Stat. (exempting workers' compensation adjudications from chapter 120, stating "no judge of compensation claims shall be considered an agency or a part thereof"). Likewise, Chapter 120, Florida Statutes, provides as follows: "[A] judge of compensation claims, in adjudicating matters under chapter 440, is not an agency or part of an agency for purposes of this chapter." § 120.80(1)(b), Fla. Stat.

A technical importation of APA remedial vocabulary into the workers' compensation context reflects a misunderstanding of the quasi-judicial nature of JCCs. The Legislature has been deliberate that workers' compensation adjudications operate under their own self-contained procedural rules. Section 440.29(3), Florida Statutes (2021) provides, "The practice and procedure before the judge of compensation claims shall be governed by the rules adopted by the Office of Judges of Compensation Claims." *See also Sedgwick Claims Mgmt. Servs. v. Thompson*, 419 So. 3d 1104, 1113 (Fla. 1st DCA 2025). Section 440.015, Florida Statutes, declares the purpose of worker's compensation as the "quick and efficient

48

delivery of disability and medical benefits to an injured worker." Section 440.25, Florida Statutes, implements that purpose through a bespoke set of hearing procedures, notice requirements, and evidentiary standards that have no counterpart in chapter 120 and broadly mirror civil court procedure. These are not gap-fillers borrowed from the APA.

JCCs issue final orders. ALJs issue recommended orders subject to substantive agency revision under section 120.57(1)(l), Florida Statutes. The APA's remedial vocabulary—"set aside," "modify," "remand"—is calibrated to that hierarchical relationship: it preserves the agency's ongoing policy authority even after a court has reviewed its action. A court that "sets aside" rather than "reverses" an agency order implicitly acknowledges that the agency retains the power and discretion to act again within its sphere. JCCs have no such supervising agency. No executive body reviews JCC orders for policy consistency before the order is issued. JCC order determinations are final adjudications of private rights—specifically, whether a particular worker has a compensable claim under section 440.09, Florida Statutes.

JCCs, unlike ALJs, litigate property rights. "An injured employee's right to receive workers' compensation benefits is a property right protected by procedural due process safeguards including notice and an opportunity to be heard." *Isaac v. Green Iguana, Inc.*, 871 So. 2d 1004, 1006 (Fla. 1st DCA 2004) (citing *Rucker v. City of Ocala*, 684 So. 2d 836, 840–41 (Fla. 1st DCA 1996) ("An injured employee's right to receive workers' compensation benefits qualifies as such a property interest.")). JCCs may litigate property rights because the Legislature created workers' compensation as a statutory substitute for common-law tort rights and vested exclusive jurisdiction over those statutory rights to JCCs, with appellate review by article V courts. This structure was declared constitutional in *Martinez v. Scanlan*, 582 So. 2d 1167 (Fla. 1991).[3]

---

[3] ALJs are governed by the Division of Administrative Hearings (DOAH) and appointed by the Chief ALJ. They serve as career executive-branch adjudicators and are disciplined by the Chief ALJ. JCCs, on the other hand, are governed by the OJCC. They are appointed through a merit based executive process

Borrowing APA remedial language imports a deference that has no structural justification in the workers' compensation context. Section 440.271, Florida Statutes, grants this Court with jurisdiction to hear "appeals" from JCC orders. Full stop. It does not cross-reference chapter 120. It does not incorporate APA remedial categories by reference. It does not instruct this Court to treat JCC appeals as judicial review of executive agency action. The rationale that the OJCC is nominally organized under the executive branch and so the full range of appellate dispositions is somehow unavailable or inapplicable is contrary to sections 440.021 and 120.80. Because JCC orders are reviewed by plenary appeal pursuant to Florida Rule of Appellate Procedure 9.180, this Court exercises full appellate authority—the same authority we exercise over court judgments. There is no doctrinal rule requiring "set aside" rather than "reverse." Nothing in chapter 440 limits this Court's remedial authority to vacatur only. Function must control over a label. The choice is functional, not jurisdictionally constrained.

"Setting aside" an order means that the court nullifies, vacates, or renders the order ineffective (as if it had never been entered). It does not necessarily mean that the case is over but that the order is undone and the issues may be reconsidered or reheard. However, "set aside" requires the prior order to be treated as though it never existed. The JCC begins anew—possibly to make new findings or conduct a new merits hearing. Reversal does not render the order a nullity. It declares it to be incorrect or explains how the lower court or tribunal was wrong. Reversal most often means a limitation to the existing record. However, vacatur may result in no new evidence being considered or that a new hearing is required and the record is open. A practical example spells out the impact in workers' compensation appeals: An employer asserts a claimant misrepresented a prior condition, and the JCC denies

different from article V judges and ALJs. The Chief Financial Officer (CFO) of Florida appoints JCCs. Then, they must be retained every four years. JCCs are subject to the Code of Judicial Conduct and disciplined by the OJCC and may be removed by the CFO.

benefits under section 440.105, Florida Statutes. If this Court reverses on the basis that the evidence was legally insufficient to prove all elements of defense, then the defense fails as a matter of law, the JCC proceeds as though no misrepresentation defense bar exists, and the claim proceeds to the merits. If we were to reverse with directions to award benefits, the JCC must award benefits, and litigation is effectively concluded beyond calculations of benefits due. However, if the order is set aside or vacated because of lack of notice that the E/C asserted a misrepresentation defense, a new hearing is required, evidence may reopen, defense can be re-litigated properly, and the E/C can rectify notice mistakes. Because the order on appeal is "set aside" and treated as a nullity, the matter begins anew. The due process issues resulting are immeasurable.

Because of the piecemeal litigation of workers' compensation cases, finality and clarity are critical. When a JCC's order is set aside and rendered a nullity, it leaves the lower tribunal docket with no technical resolution. Is the JCC to issue a status order to document the determination of claims raised in the outstanding PFBs that are the focus of the nullified order? What does this do to SOL calculations (especially now with multiple time clocks), res judicata analysis, and whether issues are ripe for adjudication?

Workers' compensation is a statutory creation, and adjudication of those statutory rights does not invade core article V judicial power. That established, there is no authority depriving this Court, which has exclusive jurisdiction over all workers' compensation appeals, of the remedies of reversal and remand. As the vacatur of the order on appeal renders it a nullity, on remand the JCC is technically at liberty to set a new hearing, take additional evidence, and litigation begins anew. Because this Court is not bound by APA remedial options, the majority should reverse and remand the order and not set it aside.

_____

Randall T. Porcher of Morgan and Morgan, Tallahassee; Joseph Bilotta of Vassallo, Bilotta & Davis, West Palm Beach, for Appellant.

William H. Rogner of HR Law, P.A., Orlando, for Appellees.